**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CHRISTOPHER YOCUM** and **KATHLEEN YOCHUM,** his wife, **NATIONWIDE MUTUAL INSURANCE COMPANY,**<br><br>        Plaintiffs,<br><br>   vs.<br><br>**FEDERATED MUTUAL INSURANCE COMPANY,**<br><br>        Defendant. | 2:05cv1789<br>**Electronic Filing** |

**MEMORANDUM OPINION**

September 18, 2007

**I.    INTRODUCTION**

Plaintiffs, Christopher Yocum and Kathleen Yocum ("Plaintiffs" or the "Yocums"), filed this action in the Court of Common Pleas of Allegheny County, Pennsylvania, on December 1, 2005. Plaintiffs are seeking a declaratory judgment that Defendant, Federated Mutual Insurance Company ("Federated") is required to provide them underinsured motorist ("UIM") benefits with a limit of one million ($1,000,000) dollars. Pursuant to 28 U.S.C. §§ 1332 and 1441(a), Federated removed the action to this Court.

On April 13, 2006, the Court granted motion to intervene filed by the Nationwide Mutual Insurance Company ("Nationwide"). That same day, Nationwide filed a complaint for declaratory judgment seeking the same declaration as the Yocums. Federated filed its answer on April 18, 2006, which included a counterclaim against the Yocums and Nationwide.

Nationwide filed a motion for summary judgment which the Yocums adopted and joined in its entirety. Federated has filed a cross-motion for summary judgment. All parties have responded and the motions are now before the Court.

**II.     STATEMENT OF THE CASE**

On April 30, 2002, as part of its insurance policy with Federated (Policy No. 9316052), J & A Heating and Cooling ("J & A") signed and dated Form F80-104.1 entitled "Pennsylvania - Underinsured Motorists Coverage Options."  The form states:

> State law requires that underinsured motorist coverage must be offered on all automobile liability policies at limits equal to your policy's Bodily Injury liability limit.  You have the right to reject this coverage.  You may also select lower limits, down to the state financial responsibility limit, or higher limits not to exceed your policy's Bodily Injury liability limit.  You may also select stacked or non-stacked underinsured motorists coverage.

Section 1, of Form F80-104.1 lists the following "Limit Options": (1) Limit for directors, officers, partners or owners of the named insured and family members who qualify as insureds ("Column A"); and (2) Limit for any other person who qualifies as an insured ("Column B"). Both Column A and Column B are followed by a range of amounts from $35,000 to $1,000,000. In addition, Column B is followed by the following option: "I hereby REJECT Underinsured Motorists Coverage for this group of persons only."   The final option on the form ("Column C") states: "I hereby REJECT all Underinsured Motorists Coverage as reflected in my completion of Pennsylvania - Rejection of  Underinsured Motorists Coverage Form F80-104.3."

On the form signed by J & A, a check mark was placed next to $500,000 as the limit in Column A, and a check mark was placed next to the "I hereby REJECT . . ." language in Column B.  Column C was not checked, and J & A did not sign Form F80-140.3 of the policy.  J & A also rejected stacking of UIM benefits on the same form.  This rejection applies only to the stacking of "limits for each motor vehicle insured under the policy," which has no effect of stacking of limits from other policies.

On August 19, 2003, while operating a vehicle insured under Federated Policy No. 9316052 in the course and scope of his employment, Christopher Yocum was struck by a vehicle driven by Patricia Burrell.  Yocum contends he sustained various injuries as a result of the accident, and was offered the liability limit of $50,000 under Burrell's policy. Yocum then

submitted a claim for UIM benefits under Federated Policy No. 9316052. Federated denied the claim, contending that J & A had rejected coverage for UIM benefits for its employees. Yocum then submitted a claim for UIM benefits under his personal automobile insurance policy with Nationwide. Nationwide, however, contends that the purported rejection of UIM coverage by J & A is void and does not comply with the requirements of the Pennsylvania Motor Vehicle Financial Responsibility Law. Therefore, Federated is obligated to provide UIM coverage to Yocum up to the limits of S1,000,000.00 per person.

It is undisputed that the coverage limit for bodily injury liability under Federated Policy No. 9316052 is $1,000,000. The only disputed issue here is whether rejection of UIM coverage for a class of otherwise qualifying insureds is properly classified as a rejection of UIM coverage subject to the strict statutory requirements of the Pennsylvania Motor Vehicle Financial Responsibility Law.

### III.  LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to FED. R. CIV. P 56(c), summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. To support denial of summary judgment, an issue of fact in dispute must be both genuine and material, i.e., one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id*. The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well. *Whiteland Woods, L.P. v. Township of West Whiteland,* 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P 56(e). Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587.

**IV.   DISCUSSION**

The Pennsylvania Motor Vehicle Financial Responsibility Law (the "MVFRL"), 75 PA. CONS. STAT. § 1701 *et seq.*[1], requires insurers to offer uninsured and underinsured motorist coverage, although purchase of such coverage is optional. 75 PA. CONS. STAT. § 1731. Section 1731, in pertinent part, states:

---

[1] "Pennsylvania courts are unanimous that the legislative intent underlying the MVFRL was to establish a liberal compensatory scheme of underinsured motorist protection." *Nationwide Mut. Ins. Co. v. Cosensza*, 258 F.3d 197, 208 (3d Cir. 2001); *accord Burnstein v. Prudential Prop. & Cas. Ins. Co.*, 742 A.2d 684, 687 (Pa. Super. 1999). The MVFRL "is to be construed liberally to afford the greatest possible coverage to injured claimants. In close or doubtful insurance cases, it is well-established that a court should resolve the meaning of insurance policy provisions or the legislative intent in favor of coverage for the insured." *Danko v. Erie Ins. Exchange*, 630 A.2d 1219, 1222 (Pa. Super. 1993) (citation omitted); *accord Panichelli v. Liberty Mut. Ins. Co.*, 645 A.2d 865, 867 n.3 (Pa. Super. 1994), *aff'd,* 669 A.2d 930 (Pa. 1996).

> (c) **Underinsured motorist coverage.** – Under insured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles. The named insured shall be informed that he may reject underinsured motorist coverage by signing the following written rejection form:
>
> REJECTION OF UNDERINSURED MOTORIST PROTECTION
>
> By signing this waiver I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage[2].
>
> (c.1) **Form of waiver.** – Insurers shall print the rejection forms required by subsections (b) and (c) on separate sheets in prominent type and location. The forms must be signed by the first named insured and dated to be valid. The signatures on the forms may be witnessed by an insurance agent or broker. Any rejection form that does not specifically comply with this section is void. If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage or both, as the case may be, under that policy shall be equal to the bodily injury liability limits. On policies in which either uninsured or underinsured coverage has been rejected, the policy renewals must contain notice in prominent type that the policy does not provide protection against damages caused by uninsured or underinsured motorists. Any person who executes such a waiver under subsection (b) or (c) shall be precluded from claiming liability of any person based upon inadequate information.

75 PA. CONS. STAT. §§ 1731(c) and 1731(c.1).

When there is more than one source of insurance, the MVFRL states:

> (a) **General rule.** – Where multiple policies apply, payment shall be made in the following order of priority:
>
> (1) A policy covering a motor vehicle occupied by the injured person at the time of the accident.
>
> (2) A policy covering a motor vehicle not involved in the accident with respect to which the injured person is an insured.
>
> (B) **Multiple sources of equal priority.**– The insurer against

---

[2]   The form requires the signature of the "First Names Insured" and the date of such signature.

> whom a claim is asserted first under the priorities set forth in subsection (a) shall process and pay the claim as if wholly responsible. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

75 PA. CONS. STAT. § 1733.

Pennsylvania courts have strictly applied the formal requirements of the above referenced provisions. *See Nat'l Union Fire Ins. Co. v. Irex Corp.*, 713 A.2d 1145, 1149-1150 (Pa. Super. 1998)("Section 1731 requires an insurer to use exact language and adhere to very specific technical rules in order to have an insured successfully reject UM [uninsured motorists] coverage. This mandated strict compliance with Section 1731 is founded upon a strong public policy in favoring UM/UIM coverage.").

Pennsylvania courts have been equally clear that the writing requirements for lowering specific limits of UIM coverage under Section 1734 of the MVFRL are less strict. *See Lewis v. Erie Ins. Exch.*, 793 A.2d 143, 152 (Pa. 2002). Section 1734 states: "[a] named insured may request in writing the issuance of coverages under Section 1731 (relating to availability, scope and amount of coverage) in amounts equal to or less than the limits of liability for bodily injury." 75 PA. CONS. STAT. § 1734. Clearly, Sections 1731 and 1734 relate to different forms of election. Section 1731(c.1) relates to outright waiver/rejection of UM/UIM coverage, while Section 1734 relates to the selection of lower limits of coverage. Therefore, insureds who wish to limit the amount of UIM coverage may do so without executing the formal waiver language set forth in Section 1731. *See Lewis v. Erie Ins. Exch.*, 793 A.2d at 155; *accord Leymeister v. State Farm Mut. Auto. Ins. Co.*, 100 F. Supp. 2d 269, 272 (M.D. Pa. 2000)("The language of Section 1734 is clear on its face; all that is required to request lower limits of coverage is a writing requesting the same from a named insured.").

Corporate waivers of UM/UIM coverage that satisfy the requirements of Section 1731 are valid. *Travelers Indemnity Co. v. DiBartolo*, 171 F.3d 168, 172 (3d Cir. 1999). However, waiver forms in insurance policies for corporate vehicles that fail to satisfy Section 1731

requirements are void, even where the individual seeking coverage under the policy is an employee. *See generally Fire & Cas. Co. v. Cook*, 155 Fed. Appx. 587 (3d Cir. 2005)(not precedential opinion). The Supreme Court of Pennsylvania has specifically stated:

> An injured person who makes a claim for uninsured motorist benefits under a policy to which he is not a signatory is in the category of a third party beneficiary. Historically, this Court has held that third party beneficiaries are bound by the same limitations in the contract as the signatories of that contract. The third party beneficiary cannot recover except under the terms and conditions of the contract from which he makes a claim.

*Johnson v. Pa. Nat. Ins. Cos.*, 594 A.2d 296, 299 (Pa. 1991)(Citations omitted). Clearly, Yocum has standing in this instance to argue either that J & A failed to execute a valid waiver under Section 1731 or that the statutory limitation of UIM benefits under Section 1734 is invalid.

In this instance, both the Federated Policy No. 9316052, which insured the vehicle involved in the accident, and Yocum's personal policy are applicable. Pursuant the order of priority under Section 1733, Federated's policy must process and pay the claim as if wholly responsible. Federated would be absolved of such liability if: (1) J & A effected a valid waiver/rejection pursuant to the requirements of Section 1731, or (2) J & A effected a valid limitation pursuant to Section 1734. It is undisputed that J & A did not effect a valid waiver/rejection of UIM coverage under Section 1731. It is also undisputed that J & A effected a valid amount-based limitation with respect to the insureds listed in Column A of Form F80-104.1. Therefore, the only question before the Court is whether J & A effected a valid class-based limitation in Column B of Form F80-104.1, which is the column that applies to Yocum.

The state of the law in Pennsylvania is quite clear. An outright waiver or rejection of UM/UIM coverage requires strict adherence to the formalities of Section 1731. In its execution of Form F80-104.1, J & A rejected the UIM coverage for a group of persons who qualified as insureds under the policy, namely its employees. That is clearly J & A's prerogative subject to the notice requirements of the MVFRL. However, as the insurer, Federated is charged with the duty of making sure such rejection valid. Section 1731(c.1), in fact, penalizes insurers who fail

to secure valid UM/UIM rejection waivers by applying a default amount for underinsured coverage equal to the bodily injury liability limits of the policy.  Section 1731(c.1) is specifically designed to give insurers "the proper incentive to follow the legislature's prescription for avoiding uninformed choice on the part of purchasers of insurance." *See Lewis v. Erie Ins. Exch.*, 793 A.2d at 153-154 n.14 (quoting *Leymeister v. State Farm Mut. Auto. Ins. Co.*, 100 F. Supp. 2d 269, 272 (M.D. Pa. 2000)). *See also Nationwide Mut. Ins. Co. v. Merdjanian*, 195 Fed. Appx. 78, 81 (3d Cir. 2006).

Nor can this Court accept the proposition that J & A was attempting to limit the coverage under Column B to $0.00, and therefore, strict adherence to Section 1731 is not required.   Such position by Federated is untenable.  A rejection of UIM benefits requires a waiver which satisfies the very specific technical rules of Section 1731.  To hold that Federated's rejection of UIM coverage for a certain group of insureds constitutes a limitation on the amount of UIM coverage under Section 1734 would be to ignore the plain language of both Sections 1731 and 1734. No judicial authority has made this interpretive leap, and this Court sitting in diversity is not persuaded that the Supreme Court of Pennsylvania would do so.

Federated contends that the "two-tiered approach does not involve a complete waiver of all [UIM] benefits, thereby obviating strict compliance with [Section 1731." Federated, however, cites no authority to support this proposition.  Pennsylvania has allowed  a corporation, as named insured, to reduce benefits for certain individuals while retaining higher limits for principals and their family members. S*ee MIC Prop. & Cas. Ins. Corp. v. Crawford*, 2001 U.S. Dist. LEXIS 24212 at *2 n.1 (E.D. Pa. Oct. 29, 2001).  Moreover, the Third Circuit Court of Appeals  has ruled that a corporation could waive UM/UIM motorist protection for its employees. *Travelers Indemnity Co. v. DiBartolo*, 171 F.3d at172; *see also Universal Underwriters Group v. Tusay*, 2004 U.S. Dist. LEXIS 7328 (E. D. Pa. May 20, 2004).  No court, however, has allowed such rejection without proper adherence to the statutory requirements of the MVFRL.

The Court finds the remainder of Federated's arguments to be without merit.

## V. CONCLUSION

Based upon the foregoing, the motion for summary judgment filed on behalf of Nationwide and the Yocums will be granted, and Federated's motion for summary judgment will be denied. An appropriate judgment order follows.

                                          s/ David Stewart Cercone
                                          David Stewart Cercone
                                          United States District Judge

cc:    Michael E. Kennedy
        Sciullo & Goodyear
        564 Forbes Avenue
        1302 Manor Building
        Pittsburgh, PA 15219

        Peter B. Skeel
        Summers, McDonnell, Walsh & Skeel
        707 Grant Street
        Gulf Tower, Suite 2400
        Pittsburgh, PA 15219

        Kenneth T. Newman
        Louis C. Long
        Pietragallo, Bosick & Gordon
        One Oxford Centre
        38th Floor
        Pittsburgh, PA 15219